UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TORREY PINES LOGIC, INC.,<br><br>       Plaintiff, Counterdefendant,<br><br>v.<br><br>GUNWERKS, LLC,<br><br>       Defendant, Counterclaimant. | Case No.: 19-cv-02195-H-DEB<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS BREACH OF CONTRACT COUNTERCLAIM**<br><br>[Doc. No. 79.] |

On October 5, 2020, Plaintiff and Counterdefendant Torrey Pines Logic, Inc. ("TPL") filed a motion to dismiss Defendant and Counterclaimant Gunwerks, LLC ("Gunwerks")'s breach of contract counterclaim for lack of subject matter jurisdiction and for failure to state a claim. (Doc. Nos. 78, 79.) On October 19, 2020, Gunwerks filed a response in opposition to TPL's motion to dismiss. (Doc. No. 82.) On October 26, 2020, TPL filed a reply. (Doc. Nos. 89, 91.) On October 26, 2020, the Court took the matter under submission. (Doc. No. 85.) For the reasons below, the Court denies TPL's motion to dismiss the breach of contract counterclaim.

## BACKGROUND

The following factual background is taken from the allegations in the parties' pleadings. Plaintiff Torrey Pines Logic is a California corporation with its principal place

of business in San Diego, California. (Doc. No. 1, Compl. ¶ 1.) Defendant Gunwerks is a Wyoming limited liability company with its principal place of business in Cody, Wyoming. (Doc. No. 73, Amended Counterclaims ¶ 1.) TPL and Gunwerks are competitors in the field of the manufacturing of riflescopes. (Id. ¶¶ 1, 3.)

U.S. Patent No. 10,480,901 ("the '901 patent"), entitled "Riflescope with Feedback Display and Related Methods," issued on November 19, 2019. (Doc. No. 11, Ex. C at 2.) The '901 Patent on its face lists "Christopher Ryan Thomas" as the inventor and "Gunwerks, LLC" as the assignee. (Id.) The '901 Patent issued from U.S. Patent Application No. 15/581,244 ("the '244 application"). (Id.)

The '244 application, entitled "Riflescope with Feedback Display and Related Methods," was filed on April 28, 2017 with the USPTO. (Doc. No. 1-2, Compl. Ex. 1 at 3-9, 42.) When the '244 application was filed, it listed Christopher Thomas and Forrest Babcock as the inventors. (Id. at 8, 34.)

TPL alleges that although Mr. Babcock was originally listed an inventor on the '244 application, during the prosecution of the application, Mr. Babcock was removed as an inventor due to misrepresentations made by Gunwerks and its attorneys to the USPTO. (Doc. No. 1, Compl. ¶ 31.) TPL further alleges that Mr. Babcock assigned all his rights in the '244 application to TPL. (Id. ¶¶ 14, 32, 39, Ex. 3.) TPL asserts that Mr. Babcock is a co-inventor of the '901 Patent, and, thus, TPL has an ownership interest in the '901 patent through its assignment agreement with Mr. Babcock. (Id. ¶¶ 26, 33-36.)

On November 18, 2019, Plaintiff TPL filed a complaint against Defendant Gunwerks, alleging claims for: (1) a declaratory judgment for a correction of inventorship under 35 U.S.C. § 256 and a declaration of ownership of U.S. Patent No. 10,480,901; and (2) intentional interference with a contractual relationship. (Doc. No. 1, Compl.) On January 30, 2020, Gunwerks filed an answer to the complaint along with counterclaims against TPL. (Doc. No. 11.) In its answer and counterclaims, Gunwerks attempted to add Revic, LLC as an additional counterclaimant and Christopher R. Thomas as an additional counterdefendant. (See id.)

On July 14, 2020, the Court: (1) granted TPL and Thomas's motion to sever Revic's counterclaims; (2) denied TPL and Thomas's motions to dismiss Gunwerks's counterclaims; and (3) denied TPL and Thomas's motion for a more definite statement. (Doc. No. 53 at 16.)  In the order, the Court dismissed Revic and its counterclaims from the action without prejudice and without leave to amend. (Id. at 16.)  On July 29, 2020, pursuant to the parties' joint motion to dismiss, the Court dismissed Mr. Thomas from the action without prejudice. (Doc. No. 55.)

On September 22, 2020, Gunwerks filed a first amended answer and counterclaims, alleging counterclaims against TPL for: (1) a declaratory judgment of ownership of the '901 patent; (2) tortious interference with a contractual relationship; (3) intentional interference with a prospective business advantage; (4) breach of contract; and (5) intentional interference with a contractual relationship. (Doc. No. 73.)  By the present motion, TPL moves to dismiss Gunwerk's counterclaim for breach of contract pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim. (Doc. No. 78.)

## DISCUSSION

**I.     Legal Standards**

   A.     Legal Standards for a Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims for lack of subject matter jurisdiction. "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.  "The court need not presume the

truthfulness of the plaintiff's allegations." Id. "'Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.'" Id. When lack of standing pertains to a federal court's subject-matter jurisdiction under Article III, it is "properly raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." White, 227 F.3d at 1242.

B. Legal Standards for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be granted. See Conservation Force v. Salazar, 646 F.3d 1240, 1241 (9th Cir. 2011). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading stating a claim for relief containing "a short and plain statement of the claim showing that the pleader is entitled to relief." The function of this pleading requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).

In reviewing a Rule 12(b)(6) motion to dismiss, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the claimant.  See Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 945 (9th Cir. 2014).  But, a court need not accept "legal conclusions" as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Further, it is improper for a court to assume the claimant "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

In addition, a court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice.  See Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010).  If the court dismisses a complaint for failure to state a claim, it must then determine whether to grant leave to amend.  See Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995).  "A district court may deny a plaintiff leave to amend if it determines that 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' or if the plaintiff had several opportunities to amend its complaint and repeatedly failed to cure deficiencies."  Telesaurus VPC, LLC v. Power, 623 F.3d 998, 1003 (9th Cir. 2010) (internal quotation marks and citations omitted).

## II.   Analysis

In the amended answer and counterclaims, Gunwerks alleges a counterclaim against TPL for breach of contract based on a May 1, 2017 nondisclosure agreement between TPL and Revic.  (Doc. No. 73, Amended Counterclaims ¶¶ 161-67.)  TPL argues that this claim should be dismissed pursuant to Rule 12(b)(1) for lack of standing and pursuant to Rule 12(b)(6) for failure to state a claim.  (Doc. No. 78 at 4-12.)

Under Wyoming law: "'The elements for a breach of contract claim consist of a lawfully enforceable contract, an unjustified failure to timely perform all or any part of

what is promised therein, and entitlement of injured party to damages.'"[1] Schlinger v. McGhee, 268 P.3d 264, 268 (Wyo. 2012) (quoting Reynolds v. Tice, 595 P.2d 1318, 1323 (Wyo. 1979)). The agreement at issue, the May 1, 2017 NDA, on its face lists "Revic LLC" and "Torrey Pines Logic, Inc." as the contracting parties.[2] (Doc. No. 11, Ex. G at 4.) Gunwerks concedes this in its amended counterclaims and in its opposition. (See Doc. No. 73, Amended Counterclaims ¶¶ 70-72; Doc. No. 82 at 2.)

TPL argues that because Gunwerks is not a party to the May 1, 2017 NDA, its counterclaim for breach of that agreement should be dismissed for lack of standing pursuant to Rule 12(b)(1). (Doc. No. 78 at 4-9.) TPL argues that because Gunwerks is not a party to the NDA, and it never obtained any rights to the NDA, Gunwerks lacks any rights to sue under the NDA. (Id.)

As an initial matter, the Court notes that TPL's specific arguments regarding standing may not be raised via a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. Here, TPL argues that Gunwerks lacks standing to bring the present breach of contract claim because Gunwerks has no rights in the May 1, 2017 NDA between TPL and Revic. (Doc. No. 78 at 4-9.) The Ninth Circuit has explained that the question of whether a plaintiff "possesses legally enforceable rights under [an] agreement is a question of the merits rather than one of constitutional standing." In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig., 975 F.3d 770 n.4 (9th Cir. 2020); accord Lindsey v. Starwood Hotels & Resorts Worldwide Inc., 409 F. App'x 77, 78 (9th Cir. 2010) ("Whether a plaintiff possesses legally enforceable rights under a contract is a question on the merits rather than a question of constitutional standing."); see also SM Kids, LLC v. Google LLC, 963 F.3d 206, 212 (2d Cir. 2020) ("The other circuits are in accord that

---

[1] The parties agree that the relevant agreements are governed by Wyoming law. (Doc. No. 78 at 5 n.3; Doc. No. 82 at 5.)

[2] The Court may consider the contents of the May 1, 2017 NDA because it is an exhibit attached to the pleadings, specifically Gunwerks's counterclaims. See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).

6

contractual standing goes to the merits of a claim rather than to the existence of subject-matter jurisdiction." (collecting cases)).  Thus, this issue is appropriately raised via a Rule 12(b)(6) motion, not a Rule 12(b)(1) motion.  See Lindsey, 409 F. App'x at 78.  As such, the Court construes TPL's motion to dismiss the breach of contract claim on the grounds that Gunwerks lacks any rights under the agreement at issue as a Rule 12(b)(6) motion to dismiss for failure to state a claim on that ground.  See, e.g., id.; Melcher v. Fried, No. 16-CV-02440-BAS(BGS), 2018 WL 2411747, at *2 n.4 (S.D. Cal. May 29, 2018); Rote v. Lot Sols., Inc., No. 3:16-CV-1434-PK, 2017 WL 1148281, at *5 (D. Or. Mar. 3, 2017), report and recommendation adopted, No. 3:16-CV-1434-PK, 2017 WL 1137449 (D. Or. Mar. 27, 2017).  And the Court reviews TPL's motion to dismiss under the Rule 12(b)(6) standard.  See id.

In the amended counterclaims, Gunwerks alleges that it "purchased all of the assets (tangible and intangible) of Revic on or about January 1, 2019."  (Doc. No. 73, Amended Counterclaims ¶ 48.)  Gunwerks further alleges: "As a result of Gunwerks purchasing all of the assets (tangible and intangible) of Revic on or about January 1, 2019, including Revic's rights in the 2017 Torrey Pines NDA, Gunwerks legally stands in the shoes of Revic to enforce the 2017 Torrey Pines NDA."  (Id. ¶ 162.)  Gunwerks argues that these allegations are sufficient at the pleading stage to establish its right to bring a claim for breach of the May 1, 2017.  (Doc. No. 82 at 5-6.)  The Court agrees that Gunwerks's allegations are sufficient to establish Gunwerks's right to sue under the agreement at the pleading stage.  Cf. Cent. Wyoming Med. Lab., LLC v. Med. Testing Lab, Inc., 43 P.3d 121, 128 (Wyo. 2002) ("'In the absence of a contrary intention, an assignment usually passes as incidents all ancillary remedies and rights of action which the assignor had or would have had for the enforcement of the right or chose assigned.'" (quoting 6A C.J.S. Assignments § 77 (1975)); Knott v. McDonald's Corp., 147 F.3d 1065, 1067 (9th Cir. 1998) (explaining that "rights attached to a contract, including the right to sue for breach of contract, are assignable"); 6A C.J.S. Assignments § 94 (2020) ("[I]n the absence of a contrary intention, an assignee acquires the same rights as the assignor to protect and

enforce the assigned rights, including the right to maintain a civil action[.] . . . For instance, an assignee can enforce an assigned contract against the original obligor." (footnotes omitted) (citing Cent. Wyoming Med. Lab., 43 P.3d 121)).

TPL argues that a review of the relevant transfer agreement between Gunwerks and Revic demonstrates that Gunwerks never obtained any rights in the May 1, 2017 NDA. (Doc. No. 78 at 6-9.) But the Court may not consider the transfer agreement at this stage in the proceedings. "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"[3] Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). Thus, the Court may not consider the contents of the transfer agreement at this time.[4]

TPL also argues that even assuming Revic assigned the NDA to Gunwerks, Gunwerks's counterclaim still fails because an assignment of an agreement is insufficient to convey an accrued cause of action (like the present breach of contract claim) under the agreement. (Doc. No. 89 at 5-6.) TPL attempts to support this argument by citing to the following passage from the Wyoming Supreme Court's decision in Central Wyoming Medical Laboratory, LLC v. Medical Testing Lab, Inc.: "'An assignment of a title or interest in property, however, does not, of itself, constitute an assignment of an existing cause of action for a tort previously committed with reference to the property.'" 43 P.3d at 128–29 (quoting 6A C.J.S. Assignments § 77 (1975)). But in this passage, the Wyoming Supreme Court is referring to "'an existing cause of action for tort.'" Id. The counterclaim

---

[3]  The Court acknowledges that at the 12(b)(6) stage, it may consider documents subject to judicial notice or documents incorporated by reference into the complaint. See Coto Settlement, 593 F.3d at 1038. But TPL has not demonstrate that the transfer agreement meets either of those standards. The transfer agreement is not a matter of public record. Indeed, TPL filed the agreement under seal. Further, Gunwerks's counterclaims do not specifically identify or refer to the transfer agreement in its allegations. (See generally Doc. No. 73.)

[4]  Although the Court declines to consider the contents of the transfer agreement at the 12(b)(6) stage, the Court notes that its decision is without prejudice to TPL raising its arguments regarding the transfer agreement at a later stage in the proceedings, such as through a motion for summary judgment.

at issue is a breach of contract claim, not a tort claim.  Cf. Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd., 929 P.2d 1228, 1235 (Wyo. 1996) (distinguishing claims brought "under contract theory" from "those which fall within tort principles").  Thus, TPL's reliance on the above passage is misplaced, and the Court rejects this argument.  See Cent. Wyoming Med. Lab., 43 P.3d at 128; 6A C.J.S. Assignments § 94 (2020).

Finally, TPL argues that Gunwerks's breach of contract counterclaim should be dismissed for failure to state a claim because Gunwerks has failed to adequately allege the breach element of its counterclaim.  (Doc. No. 78 at 9-12.)  Specifically, TPL argues that Gunwerks has failed to adequately identify or describe in its allegations any specific confidential information that TPL purportedly misused or disclosed in violation of the NDA.[5]  (Id. at 10.)

In the amended counterclaims, Gunwerks alleges that the May 1, 2017 NDA places several restrictions on the use and disclosure of Revic's confidential information by TPL.[6]  (Doc. No. 73, Counterclaims ¶¶ 74-77 (quoting Doc. No. 11, Ex. G §§ 4, 5).)  And Gunwerks supports these allegations with quotations from the relevant provisions in the NDA.  (Id.)  Gunwerks also alleges that Revic shared its confidential information with TPL, and Gunwerks describes the confidential information that was shared.  (Id. ¶ 80.)  Gunwerks alleges that:

---

[5] In an effort to support this argument, TPL cites to several exhibits that it attached to its reply brief.  (See Doc. No. 89 at 8 (citing Exs. D-F).)  But, a court "'may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'"  Lee, 250 F.3d at 688.  Thus, the Court may not consider these materials at this stage in the proceedings.  In addition, it is generally improper to attach new exhibits to a reply brief.  See Tovar v. U.S. Postal Serv., 3 F.3d 1271, 1273 n.3 (9th Cir. 1993); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996); Zkey Investments, LLC v. Facebook Inc., 225 F. Supp. 3d 1147, 1158 (C.D. Cal. 2016).

[6] "Paragraph 2 of the 2017 Torrey Pines NDA defines confidential information to include, information about 'goods and services, customers and prospective customers . . ., technical data, know-how, trade secrets, computer software and other proprietary and intellectual property and plans and strategies for future developments relating to any of the foregoing.'"  (Doc. No. 73, Counterclaims ¶ 73 (quoting Doc. No. 11, Ex. G § 2).)

Torrey Pines breached the 2017 Torrey Pines NDA by, among other things:

> (a) using, disclosing, and/or disseminating Revic's confidential information to compete with Revic without authorization;
>
> (b) making, having made, using, or selling for any purpose a product or resulting item using, incorporating, or derived from Revic's confidential information to compete with Revic.
>
> (c) treating Revic's confidential information as Torrey Pines' own property contrary to, and to the detriment of, Revic's ownership rights.

(Id. ¶ 165.) Gunwerks further alleges that "Torrey Pines has used and continues to use Revic's confidential information to develop [a] competing riflescope." (Id. ¶ 105.) These allegations are sufficient at the pleading stage to allege the "breach" element (the unjustified failure to perform element) of Gunwerks's breach of contract counterclaim. In sum, the Court declines to dismiss Gunwerks's breach of contract counterclaim.

## CONCLUSION

For the reasons above, the Court denies TPL's motion to dismiss Gunwerks's breach of contract counterclaim.

**IT IS SO ORDERED.**

DATED: October 28, 2020

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT